**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NORTH CAROLINA**
**WESTERN DIVISION**
**C.A. No. 5:12-cv-305**

| | | |
|---|---|---|
| ANNE-MARIE JACOBUS, | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **VERIFIED COMPLAINT** |
| | ) | |
| SALLIE MAE, INC.; SLM EDUCATION LOAN | ) | **JURY TRIAL DEMANDED** |
| CORPORATION; EXPERIAN INFORMATION | ) | |
| SOLUTIONS, INC., INTEGRITY FINANCIAL | ) | |
| PARTNERS, INC.; and CENTRAL CREDIT | ) | |
| SERVICES, INC. | ) | |
| Defendants. | ) | |
| _____ | ) | |

      NOW COMES Anne-Marie Jacobus, by and through counsel, and makes this Complaint

against Defendants, SALLIE MAE, INC.; SLM EDUCATION LOAN CORPORATION;

EXPERIAN INFORMATION SOLUTIONS, INC.; INTEGRITY FINANCIAL PARTNERS,

INC.; and CENTRAL CREDIT SERVICES, INC., alleging and saying as follows:

**INTRODUCTION:**

      This is an action for damages brought by an individual consumer for Defendants'

violations of the Fair Debt Collections Practices Act (hereinafter, "FDCPA"), 15 U.S.C. §§ 1692,

et seq., which prohibits debt collectors from engaging in abusive, deceptive and unfair practices;

of North Carolina's Prohibited Practices by Collection Agencies (hereinafter, "PPCA"),

N.C.G.S. § 58-70-90, et seq. and Prohibited Acts by Debt Collectors (hereinafter, "PADC"),

N.C.G.S. § 75-50, et seq.; and of the Fair Credit Reporting Act (hereinafter, "FCRA"), 15 U.S.C.

§§ 1681 et seq.

      When it enacted the FDCPA, Congress found extensive evidence of abusive, deceptive,

and unfair debt collection practices by many debt collectors.  Two of Congress' stated purposes

in enacting the FDCPA were to eliminate abusive and deceptive debt collection practices and to ensure that those debt collectors who refrain from abusive practices are not competitively disadvantaged. <u>U.S. v. National Financial Services, Inc.</u>, 98 F.3d 131, 135 (4th Cir. 1996). The FDCPA specifically prohibits attempts to collect amounts not due. 15 U.S.C. § 1692f(1).

## JURISDICTION

1.      Jurisdiction of this Court arises pursuant to 15 U.S.C. § 1692k(d), 15 U.S.C. § 1681p, and North Carolina law.

2.      This action arises out of Defendants' violations of the FDCPA, North Carolina's PPCA, and the FCRA in their illegal efforts to collect a consumer debt from Plaintiff.

3.      Venue is proper in this District because Plaintiff resides here and Defendants have been conducting business here.

4.      This case is brought within one year of the FDCPA violations in compliance with the statute of limitations at 15 U.S.C. § 1692k(d), within two years of the FCRA violations in compliance with the statute of limitations at 15 U.S.C. § 1681p, within three years of the alleged breach of contract in compliance with the statute of limitations at N.C.G.S. § 1-52(1), and within four years of the North Carolina Prohibited Practices by Collection Agencies violations, in compliance with the statute of limitations at N.C.G.S. § 75-16.2.

## PARTIES

### Plaintiff Anne-Marie Jacobus

5.      Plaintiff Anne-Marie Jacobus is a natural person residing in the City of Raleigh, County of Wake, State of North Carolina.

6.      Plaintiff is a "consumer" and/or a person affected by a violation of the FDCPA under 15 U.S.C. §§ 1692a(3) and 1692k .

7.      Plaintiff is also a "consumer" as defined by North Carolina's PPCA at N.C.G.S. §

58-70-90(2).

8.      Plaintiff is also a "consumer" as defined by North Carolina's PADC at N.C.G.S. § 75-50(1).

9.      Plaintiff is also a "consumer" as defined by FCRA at 16 U.S.C. § 1681a(c).

### Defendants Sallie Mae, Inc. and SLM Education Loan Corporation

10.      Defendant SALLIE MAE, INC., ("SALLIE") is a Delaware corporation with a principal place of business at 2001 Edmund Halley Drive, Reston, Virginia 20190, and a registered agent, CT Corporation System, at 150 Fayetteville St., Box 1011, Raleigh, North Carolina 27601.

11.      Defendant SLM EDUCATION LOAN CORPORATION ("SLM") is a Delaware corporation with a principal place of business at 2001 Edmund Halley Drive, Reston, Virginia 20191.

12.      SLM originates, purchases, consolidates, and collects on student loans.

13.      SLM was and is a "debt collector" as defined by the PADC, N.C.G.S. § 75-50(3)

14.      SALLIE is a loan servicer that acts as the administrator and agent for SLM.

15.      The acts of SALLIE are attributable to SLM.

16.      SALLIE is engaged in the business of collecting defaulted debts from North Carolina consumers by telephone and mail.

17.      SALLIE was and is a "collection agency" as defined by the PPCA, N.C.G.S. § 58-70-15(b) and 58-70-90(1).

18.      In the alternative, SALLIE was and is a "debt collector" as defined by the PADC, N.C.G.S. § 75-50(3).

19.      SALLIE outsources some of its collection activities to third-party collection

agencies.

**Defendant Experian Information Solutions, Inc.**

20.     Defendant EXPERIAN INFORMATION SOLUTIONS, INC., ("EXPERIAN") is

a Kansas corporation with a principal place of business at 475 Anton Blvd., Costa Mesa,

California  92626, and a registered agent, CT Corporation System, at 150 Fayetteville St., Box

1011, Raleigh, North Carolina  27601.

21.     EXPERIAN is a "consumer reporting agency" as defined by 15 U.S.C. § 1681(f).

22.     EXPERIAN is regularly engaged in the business of assembling, evaluating, and

distributing information concerning consumers for the purpose of furnishing consumer reports,

as defined by15 U.S.C. § 1681(d), for third parties.

23.     Third parties pay EXPERIAN in return for the receipt of such consumer reports.

**Defendant Integrity Financial Partners, Inc.**

24.     Defendant INTEGRITY FINANCIAL PARTNERS, INC., ("INTEGRITY") is a

Kansas corporation with a principal place of business at 4370 W. 109TH Street, Suite 100,

Overland Park, Kansas 66211, and a registered agent, Corporation Service Company, at 327

Hillsborough Street, Raleigh, North Carolina  27603.

25.     INTEGRITY collects alleged debts on behalf of SALLIE.

26.     At all times relevant to this complaint, INTEGRITY was an agent of SALLIE

engaged in SALLIE's business and acting within the course and scope of its authority, and

SALLIE is therefore liable for the acts or omissions of INTEGRITY.

27.     INTEGRITY is licensed as a debt collection agency by the North Carolina

Department of Insurance.

28.     INTEGRITY is engaged in the business of collecting defaulted debts from North

Carolina consumers by telephone and mail.

4

29.     INTEGRITY was and is a "debt collector" as defined by the FDCPA, 15 U.S.C. § 1692a(6).

30.     INTEGRITY was and is a "collection agency" as defined by the PPCA, N.C.G.S. § 58-70-15(b) and 58-70-90(1).

### Defendant Central Credit Services, Inc.

31.     Defendant CENTRAL CREDIT SERVICES, INC. ("CCS") is a Florida corporation with a principal place of business at 9550 Regency Square Blvd. #500, Jacksonville, Florida 32225, and a registered agent, CT Corporation System, at 150 Fayetteville St., Box 1011, Raleigh, North Carolina 27601.

32.     CCS collects alleged debts on behalf of SALLIE.

33.     At all times relevant to this complaint, CCS was an agent of SALLIE engaged in SALLIE's business and acting within the course and scope of its authority, and SALLIE is therefore liable for the acts or omissions of CCS.

34.     CCS is licensed as a debt collection agency by the North Carolina Department of Insurance.

35.     CCS is engaged in the business of collecting defaulted debts from North Carolina consumers by telephone and mail.

36.     CCS was and is a "debt collector" as defined by the FDCPA, 15 U.S.C. § 1692a(6).

37.     CCS was and is a "collection agency" as defined by the PPCA, N.C.G.S. § 58-70-15(b) and 58-70-90(1).

### FACTUAL ALLEGATIONS

38.     Plaintiff Anne-Marie Jacobus is an art historian who undertook graduate training to qualify for a career as a museum curator.

39. While attending graduate school, Ms. Jacobus incurred a student loan ("the Account").

40. Defendant SLM purchased the Account in 2001.

41. Defendant SALLIE became the loan servicer for the Account.

42. Defendants SLM and SALLIE designated the Account as number ******8960-1.

43. Other than this Account, Ms. Jacobus has never had any other accounts of any kind held by SLM or serviced by SALLIE.

44. During a period of financial hardship following her completion of graduate school, Ms. Jacobus became unable to make her student loan payments.

45. Thereafter, in 2010, SALLIE filed a lawsuit ("the Lawsuit") against Ms. Jacobus in the General Court of Justice, District Court, Wake County, North Carolina to collect on the Account.

46. The Lawsuit was titled Sallie Mae, Inc. as administrator and agent for Slm Education Loan Corporation vs. Anne-Marie Jacobus, and was designated Wake County File No. 10 CVD 9844.

47. Ms. Jacobus filed counterclaims to the Lawsuit regarding false information that SALLIE had attached to its lawsuit complaint.

48. Mindful of her responsibility to make good with her creditors, Ms. Jacobus eventually in February 2011 reached a settlement of the Lawsuit with SALLIE that required her to make a settlement payment to SALLIE that was less than the amount SALLIE had originally claimed that Ms. Jacobus owed.

49. In the settlement agreement signed by both parties, SALLIE agreed in return for said settlement payment to give up "any and all claims and demands regarding" the Account.

6

50. This provision was binding not only on SALLIE, but also under agency law upon its affiliate, SLM, for whom SALLIE acted as an agent with respect to the Account.

51. The provision regarding the release of claims was a material term of the settlement agreement and was part of the consideration Ms. Jacobus expected to receivefor resolving the lawsuit.

52. Ms. Jacobus made the agreed-upon settlement payment on February 28, 2011, by means of a check made payable to and delivered by her attorney to SALLIE's attorneys, the law firm of Smith Debnam Narron Drake Saintsing & Myers, LLP ("Smith Debnam").

53. Upon information and belief, based on communications with Plaintiff's bank, Smith Debnam cashed the settlement check on SALLIE's behalf or about March 17, 2011.

54. Ms. Jacobus and SALLIE further filed with the Court on March 22, 2011, a stipulation of mutual dismissal with prejudice of the Lawsuit.

55. Having settled the Lawsuit over the account, Ms. Jacobus had no reason to suspect that anyone would ever contact her attempting to collect on the Account again at all.

56. For reasons unknown to Ms. Jacobus, however, SALLIE broke its promise to release her of any and all claims and demands regarding the Account, as described hereafter.

57. In August 2011, Ms. Jacobus received a collection letter from Defendant INTEGRITY regarding the Account.

58. INTEGRITY informed Ms. Jacobus that it was collecting on behalf of SALLIE and alleged that Ms. Jacobus owed $22,139.05 to SALLIE on the Account.

59. The letter stated that the Account was "overdue."

60. Ms. Jacobus was very shocked, worried, and upset to learn that SALLIE was trying to collect on the settled Account.

61. However, as she did not receive any further letters from INTEGRITY, she slowly calmed down and hoped that this was the last she would hear of the matter.

62. In February 2012, however, she received another collection letter regarding the Account.

63. This time, the letter was from Defendant CCS.

64. In the letter, dated February 6, 2012, CCS informed Ms. Jacobus that it was collecting on behalf of SALLIE and alleged that Ms. Jacobus owed $22,481.67 to SALLIE on the Account.

65. The letter indicated that "SALLIE MAE, INC. has authorized Central Credit Services to negotiate a reasonable offer of settlement. […] that will significantly reduce the amount needed to satisfy your account."

66. Ironically, the letter also promised that, "once paid, your account will be settled."

67. The collection activity on behalf of SALLIE over money she no longer owed was overwhelmingly worrisome to Ms. Jacobus.

68. Ms. Jacobus felt worried that SALLIE or one of the collection agencies might wrongfully report to the credit bureaus that she still owed money on the Account.

69. Therefore, on or about March 26, 2012, Ms. Jacobus requested and received a copy of her credit file compiled and maintained by EXPERIAN ("the EXPERIAN report").

70. Upon reviewing the EXPERIAN report, Ms. Jacobus discovered that SALLIE was indeed still reporting that she owed money on the Account.

71. As of March 26, 2012, SALLIE was reporting to EXPERIAN that the Account had a current balance of $22,525.

72. As of the same date, SALLIE was also reporting to EXPERIAN that the Account

remained in a "critical status."

73.     As of the same date, SALLIE was also reporting to EXPERIAN that the Account had an "Unpaid balance reported as a loss by credit grantor."

74.     SALLIE's representations about the Account in the EXPERIAN report were false.

75.     In fact, as of March 26, 2012, the Account had been settled for over a year and had a zero balance.

76.     Credit reporting for the Account should have reflected a status of "settled for less than amount" owed, or something similar.

77.     Additionally, it appeared that EXPERIAN also included a duplicate entry for the Account in the report.

78.     This duplicate entry reflected the Account's status from 2001-2003.

79.     Upon information and belief, based on a review of the EXPERIAN report, Defendant CCS obtained Ms. Jacobus's credit report on February 6, 2012.

80.     At the time that Defendant CCS accessed Ms. Jacobus's credit report, Ms. Jacobus owed no money to either CCS or its client, SALLIE.

81.     CCS did not have a lawful or permissible purpose for requesting, obtaining, and using the Plaintiff's credit report.

82.     At this point, Ms. Jacobus felt frustrated and angry from dealing with Defendants' ongoing wrongful collection attempts.

83.     She worried that Defendants' wrongfully reports to the credit bureaus that she was "delinquent" on the Account and their wrongful procurements of her credit report would hurt her credit rating.

84.     In April 2012, Plaintiff contacted EXPERIAN disputing SALLIE's credit

9

reporting of the Account and requesting that EXPERIAN verify and correct the false representations of SALLIE in her credit file.

85.     Ms. Jacobus also asked that EXPERIAN remove from her credit report record of the wrongful inquiry of Defendant CCS.

86.     In her dispute letter, Ms. Jacobus clearly set forth the circumstances of the lawsuit, the lawsuit settlement, and her fulfillment of the payment obligations in settling the account for less than owed.

87.     Upon information and belief, based on Plaintiffs' communications with the credit reporting agencies, after receiving Plaintiff's disputes, the credit reporting agencies asked SALLIE to re-investigate the status of the Account.

88.     On or about May 18, 2012, EXPERIAN responded by letter to Ms. Jacobus's dispute.

89.     In its response, EXPERIAN indicated that the Account had a current balance of $22,660, with $5,572 past due as of May 2012.

90.     EXPERIAN also listed the Account status as "charged-off."

91.     EXPERIAN did not provide any indication of the resolution of Ms. Jacobus's dispute over the appearance on her credit file of the inquiry by Defendant CCS.

92.     Upon Ms. Jacobus's request for verification and correction of the SALLIE entry, and in accordance with its standard procedures, EXPERIAN did not evaluate or consider any of Ms. Jacobus's information, claims, or evidence, and did not make any attempt to substantially or reasonably verify SALLIE's representations.

93.     In the alternative to the allegation that EXPERIAN failed to contact SALLIE, it is alleged that EXPERIAN did forward some notice of the dispute to SALLIE and that SALLIE

failed to conduct a lawful investigation.

94.     As a result of the incidents described hereinabove, Ms. Jacobus experienced feelings of anxiety, depression, and hopelessness, as well as accompanying physical symptoms of emotional distress, such as panic attacks, for which she sought medical care and psychological counseling.

95.     Ms. Jacobus also felt embarrassed that her long-ago financial misstep continued to resurface well after she had made good with her creditor, and she did not want family or friends find out what was going on.

96.     Additionally, Ms. Jacobus also incurred out-of-pocket expenses and has had to hire an attorney.

97.     Defendant SALLIE, and, by extension, its principal, SLM, appears to have engaged in an inexcusable "bait and switch" style tactic with respect to its promises in the settlement agreement with Plaintiff.

98.     Based on a review of lawsuits recently filed against SALLIE on the PACER Case Locator and cases reported in the LEXIS database, SALLIE also has a history of unfair debt collection practices, incorrect credit reporting and wrongful verification of incorrect information to the consumer reporting agencies.

99.     The internal policies and procedures of SALLIE and SLM do not appear to place any value on their obligations under FCRA to report credit entries accurately or to reinvestigate carefully when notified by the credit reporting agencies of consumer disputes.

100.    The policies and procedures of SALLIE and SLM evince willfulness, wantonness, and reckless disregard for the rights and interests of consumers, and led directly to the injuries to Ms. Jacobus described hereinabove.

**CAUSES OF ACTION**

**Count One:**

**(As to INTEGRITY, AND CCS)**

**Violations of the Fair Debt Collection Practices Act**

**15 U.S.C. §§ 1692,** *et. seq.*

101.    The allegations of the preceding paragraphs are re-alleged and incorporated by reference as if set forth fully herein.

102.    With respect to each of the Defendants INTEGRITY and CCS, the alleged debt in this matter is a "debt" as that term is defined by the FDCPA at 15 U.S.C. § 1692a(5).

103.    Defendants, in repeatedly attempting to collect payments from Ms. Jacobus on a satisfied account with a zero balance, have violated the following provisions of the Fair Debt Collection Practices Act:

   a.   Engaging in conduct the natural consequence of which is to harass, oppress or abuse, that is, the demands that Ms. Jacobus pay money she no longer owed on an account that had been settled, in violation of the FDCPA at 15 U.S.C. § 1692d;

   b.   Using a false, deceptive, or misleading representation or means in connection with the collection of an alleged debt, in violation of the FDCPA at 15 U.S.C. § 1692e;

   c.   Falsely representing the character and amount of an alleged debt, in violation of the FDCPA at 15 U.S.C. § 1692e(2)(A);

   d.   Using a false representation and deceptive means in to attempt to collect an alleged debt, in violation of the FDCPA at 15 U.S.C. § 1692e; and

   e.   Attempting to collect amounts not permitted by law on a settled account, in

violation of the FDCPA at 15 U.S.C. § 1692f(1).

104.     As a result of Defendants' violations of the FDCPA, Plaintiff is entitled to actual damages pursuant to 15 U.S.C. § 1692k(a)(1); statutory damages in an amount up to $1,000.00 pursuant to 15 U.S.C. § 1692k(a)(2)(A) from each of the Defendants INTEGRITY and CCS; and, reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1692k(a)(3).

## Count Two:

### (As to SALLIE, INTEGRITY, AND CCS)

### Violations of the North Carolina Prohibited Practices by Collection Agencies

### N.C.G.S. § 58-70-90, *et seq.*

105.     The allegations of the preceding paragraphs are re-alleged and incorporated by reference as if set forth fully herein.

106.     With respect to each of the Defendants SALLIE, INTEGRITY, and CCS, the alleged debt in this matter is a "debt" as that term is defined by the PPCA at N.C.G.S. § 58-70-90(3).

107.     At all times relevant, Defendants, acting by and through their officers, agents, employees, or assigns, were engaged in commerce in the state of North Carolina.

108.     Defendants, in repeatedly attempting to collect payments from Ms. Jacobus on a settled account with a zero balance, have violated the following provisions of the Prohibited Practices by Collection Agencies statute:

   a.     Misrepresenting the current amounts due on the settled account, in violation of N.C.G.S. § 58-70-110(4);

   b.     Engaging in an unfair practice in attempting to collect interest or other charges to which Defendants were not legally entitled, in violation of N.C.G.S. § 58-70-

115(2); and

    c.    With respect to Defendant SALLIE, making the false accusations to Defendants INTEGRITY and CCS that Ms. Jacobus had not paid a debt, in violation of N.C.G.S. § 58-70-95(3).

109.    Defendants' acts are also unfair and deceptive in violation of N.C.G.S. § 75-1.1 in that they offend established public policy, and are immoral, unethical, oppressive, unscrupulous, substantially injurious to consumers, and have the capacity or tendency to mislead.

110.    Defendants willfully engaged in the complained of acts and practices.

111.    As a result of Defendants' actions, Plaintiff has suffered anxiety, frustration, and inconvenience in attempting to resolve this matter and has had to hire an attorney.

112.    As a result of Defendants' violations of North Carolina's Prohibited Acts by Collection Agencies, Plaintiff is entitled to statutory damages in an amount not less than $500.00 but no greater than $4,000.00 pursuant to N.C.G.S. §58-70-130 for each violation from each of the Defendants SALLIE, INTEGRITY, and FRONTLINE, actual damages from each Defendant; and, reasonable attorney's fees and costs pursuant to N.C.G.S. §75-16.1.

113.    The conduct of Defendants SALLIE as set forth hereinabove constituted willful or wanton conduct within the meaning of Chapter 1D of the North Carolina General Statutes for the reason that such conduct was carried out with conscious and intentional disregard of and indifference to Ms. Jacobus's rights, which said Defendant knew or should have known was reasonably likely to result in injury, damage or harm to her.

114.    Therefore, Ms. Jacobus is also entitled to recover punitive damages from Defendant SALLIE in an amount to be determined by the jury.

**Count Three:**

**(As to SLM and as to SALLIE in the Alternative to Count Two)**

**Violations of the Prohibited Acts by Debt Collectors ("PADC")**

**N.C.G.S. § 75-50,** *et seq.*

115.    The allegations of the preceding paragraphs are re-alleged and incorporated by reference as if set forth fully herein.

116.    In the event that neither the FDCPA nor the PPCA are applicable to SALLIE, then in the alternative, Plaintiff makes the following allegations as to SALLIE pursuant to the PADC.

117.    Plaintiff also makes the following allegations as to SLM.

118.    With respect to each said Defendant, the alleged debt in this matter is a "debt" as that term is defined by the PADC at N.C.G.S. § 75-50(2).

119.    At all times relevant, Defendants, acting by and through their officers, agents, employees, or assigns, were engaged in commerce in the state of North Carolina.

120.    Defendants, in repeatedly attempting to collect payments from Ms. Jacobus on a settled account with a zero balance, have violated the following provisions of the Prohibited Acts by Debt Collectors statute:

   a. Misrepresenting the current amounts due on the settled account, in violation of N.C.G.S. § 75-54(4); and

   b. Engaging in an unfair practice in attempting to collect interest or other charges to which Defendants were not legally entitled, in violation of N.C.G.S. § 75-55(2).

   c. Making the false accusations to Defendants INTEGRITY and CCS that Ms. Jacobus had not paid a debt, in violation of N.C.G.S. § 75-51(3).

121.    Defendants' acts are also unfair and deceptive in violation of N.C.G.S. § 75-1.1 in

that they offend established public policy, and are immoral, unethical, oppressive, unscrupulous, substantially injurious to consumers, and have the capacity or tendency to mislead.

122. Defendants willfully engaged in the complained of acts and practices.

123. As a result of Defendants' actions, Plaintiff has suffered anxiety, frustration, and inconvenience in attempting to resolve this matter and has had to hire an attorney.

124. As a result of Defendants' violations of North Carolina's Prohibited Acts by Collection Agencies, Plaintiff is entitled to statutory damages in an amount not less than $500.00 but no greater than $4,000.00 pursuant to N.C.G.S. §75-56 for each violation from each of the Defendants SALLIE and SLM, actual and punitive damages from each Defendant; and, reasonable attorney's fees and costs pursuant to N.C.G.S. §75-16.1.

125. The conduct of Defendants SALLIE and SLM as set forth hereinabove constituted willful or wanton conduct within the meaning of Chapter 1D of the North Carolina General Statutes for the reason that such conduct was carried out with conscious and intentional disregard of and indifference to Ms. Jacobus's rights, which said Defendants knew or should have known was reasonably likely to result in injury, damage or harm to her.

126. Therefore, Ms. Jacobus is also entitled to recover punitive damages from Defendants SALLIE and SLM in an amount to be determined by the jury.

**Count Four:**

***(As to Defendant CCS)***

**Violations of the Fair Credit Reporting Act ("FCRA")**

**15 U.S.C. §§ 1681 <u>et</u> <u>seq</u>.**

127. The allegations of the preceding paragraphs are re-alleged and incorporated by reference as if set forth fully herein.

128.    Defendant CCS has violated the FCRA at 15 U.S.C. § 1681b(f) by obtaining and

using Ms. Jacobus's consumer credit report from EXPERIAN without a permissible purpose that

had been certified to the consumer reporting agency.

129.    Defendant's conduct, action and inaction was willful, rendering it liable for

actual, statutory, and punitive damages in an amount to be determined by the Court pursuant to

15 U.S.C. § 1681n.

130.    In the alternative, Defendant was negligent, entitling the Plaintiff to recover actual

damages under 15 U.S.C. § 1681o.

131.    The Plaintiff is also entitled to recover costs and attorney's fees from Defendant

in an amount determined by the Court pursuant to 15 U.S.C. § 1681n, or, in the alternative, 15

U.S.C. § 1681o.

**Count Five:**

***(As to Defendants SALLIE and SLM)***

**Violations of the Fair Credit Reporting Act ("FCRA")**

**15 U.S.C. §§ 1681 <u>et</u> <u>seq</u>.**

132.    The allegations of the preceding paragraphs are re-alleged and incorporated by

reference as if set forth fully herein.

133.    With respect to Plaintiff's credit reports, Defendants SALLIE and SLM are

furnishers of credit information within the meaning of 15 U.S.C. § 1681 s-2 <u>et</u> <u>seq</u>.

134.    Defendants have violated the FCRA at 15 U.S.C. § 1681s-2(b) by actions that

include, but are not limited to the following:

      a.    Failing to permanently and lawfully correct their internal records to prevent the

           reporting and verification of false information to the consumer reporting agencies;

b.   Failing to investigate fully and properly the credit bureau's notices of the Ms. Jacobus's dispute of Defendants' credit reporting on the Account;

c.   Failing to review all relevant information regarding the Account; and

d.   Failing to respond accurately to the credit bureau.

135.   Upon information and belief, based on a review of prior cases filed against Defendant SALLIE and its affiliates, including the cases of Armour v. Sallie Mae, Inc., 2010 U.S. Dist. LEXIS 95525, *1 (D.N.J. Sept. 14, 2010), and Garza v. Sallie Mae, Inc., 2010 U.S. Dist. LEXIS 99750, *2 (W.D. Tex. Sept. 21, 2010) Defendants have engaged in a pattern or practice of inaccurate credit reporting and inept investigation of dispute notices forwarded by the credit bureaus.

136.   Defendants' conduct, action and inaction in Ms. Jacobus's case was willful, rendering them liable for actual, statutory, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

137.   In the alternative, Defendants were negligent, entitling the Plaintiff to recover actual damages under 15 U.S.C. § 1681o.

138.   The Plaintiff is entitled to recover costs and attorney's fees from Defendants in an amount determined by the Court pursuant to 15 U.S.C. § 1681n, or, in the alternative, 15 U.S.C. § 1681o.

## Count Six:

### *(As to Defendants SALLIE and SLM)*

### Breach of Contract

139.   The allegations of the preceding paragraphs are re-alleged and incorporated by reference as if set forth fully herein.

140. The actions of Defendants SALLIE and SLM in continuing to hire collection agencies to collect on a settled account constitutes breach of contract by Defendants of the agreement they entered into with Ms. Jacobus as part of the resolution of the Lawsuit.

141. Defendants did not do that which they promised to do.

142. Plaintiff is entitled to direct, incidental, and consequential damages resulting from Defendants' breach of contract, including, but not limited to the costs of obtaining her credit report, the costs of disputing her credit report, and the expense of hiring an attorney to handle this matter.

143. Defendants are also liable for punitive damages pursuant to N.C.G.S. § 1D-1, et seq., in that they breached the settlement agreement in a manner that was willful or wanton, intentional, malicious, and with reckless disregard for Plaintiff's rights and interests.

### Count Seven:

### *(As to Defendant EXPERIAN)*

### Violations of the Fair Credit Reporting Act ("FCRA")

### 15 U.S.C. §§ 1681 et seq.

144. The allegations of the preceding paragraphs are re-alleged and incorporated by reference as if set forth fully herein.

145. Defendant EXPERIAN has violated the FCRA at 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit report and credit files it published and maintains concerning the Plaintiff.

146. EXPERIAN has also violated the the FCRA at 15 U.S.C. § 1681i by actions that include, but are not limited to the following:

a. Failing to correct or delete inaccurate information in the Plaintiff's credit file after receiving actual notice of such inaccuracies;

b. Failing to conduct a proper reinvestigation of Plaintiff's dispute;

c. Failing to forward all relevant information to SALLIE, SLM, and CCS;

d. Failing to maintain reasonable procedures for identifying and verifying disputed information in Plaintiff's credit file;

e. Relying upon verification from a source, SALLIE, that it had reason to know was unreliable, given SALLIE's public record of inaccurate credit reporting and inept reinvestigation of disputes forwarded to it by the consumer reporting agencies, including disputes forwarded by EXPERIAN.

147. As a result of EXPERIAN's conduct, action, and inaction, Plaintiff suffered damages by loss of credit, loss of the ability to purchase and benefit from credit, and emotional distress.

148. EXPERIAN's conduct, action and inaction was willful, rendering it liable for actual, statutory, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

149. In the alternative, Defendant was negligent, entitling the Plaintiff to recover actual damages under 15 U.S.C. § 1681o.

150. The Plaintiff is entitled to recover costs and attorney's fees from Defendant in an amount determined by the Court pursuant to 15 U.S.C. § 1681n, or, in the alternative, 15 U.S.C. § 1681o.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Anne-Marie Jacobus prays the Court to:

1. Award her on her First Cause of Action actual damages from each of the Defendants INTEGRITY, and CCS in an amount to be determined at trial and statutory damages of $1,000.00 from each Defendant pursuant to the violations of the Fair Debt Collection Practices Act alleged therein;

2. Award her on her Second Cause of Action actual damages from each of the Defendants SALLIE, INTEGRITY, and CCS in an amount to be determined at trial and $4000 in statutory damages per violation from each and every of the four named Defendants pursuant to the violations of N.C.G.S. § 58-70-90, et. seq. alleged therein;

3. Award her on her Third Cause of Action as to Defendant SLM, and, in the alternative as to Count Two, Defendant SALLIE, actual damages from each Defendant in an amount to be determined at trial and $4000 in statutory damages per violation from each and every of the two named Defendants pursuant to the violations of N.C.G.S. § 75-50, et. seq. alleged therein;

4. Award her on her Second, or, in the alternative, Third Cause of Action punitive damages from Defendants SALLIE and SLM;

5. Award her on her Fourth, Fifth, and Seventh Causes of Action actual, statutory, and punitive damages in an amount to be determined at trial against Defendants SALLIE, SLM, CCS, and EXPERIAN pursuant to the violations of 15 U.S.C. § 1681, et seq. alleged therein;

6. Award her on her Sixth Cause of Action direct, incidental, consequential, and punitive damages from Defendants SALLIE and SLM in an amount to be determined at a trial for the breach of contract alleged therein;

7. Award her her costs of litigation and reasonable attorney's fees pursuant to N.C.G.S. §

75-16.1; 15 U.S.C. § 1692k(a)(3); and 15 U.S.C. § 1681n (or, in the alternative, 15

U.S.C. § 1681o);

8. Find that SLM is jointly and severally liable for any money damages, fees, or costs for

which its subsidiary SALLIE is liable;

9. Award her pre-judgment and post-judgment interest;

10. Grant trial before a jury on all issues so triable; and

11. Grant such other and further relief as the Court deems just and proper.

THIS the 1st day of June, 2012.

Respectfully submitted by:    <u>/s/ Suzanne Begnoche</u>
Suzanne Begnoche, Attorney at Law
Attorney for Plaintiff
NCSB # 35158
312 West Franklin Street
Chapel Hill, NC  27516
Telephone: (919) 960-6108
Facsimile: (919) 500-5289